Vasco F. Biz *v.* The Liquor Control Commission

Maltbie, C.J., Brown, Jennings, Ells and Dickenson, Js.

Submitted on briefs April 1—decided May 1, 1947

*John Buckley* and *Joel H. Reed, 2d,* appeared on the brief for the appellant (plaintiff).

*William L. Hadden,* attorney general, *Harry L. Brooks,* assistant attorney general, and *Pasquale Vioni,* assistant attorney general, appeared on the brief for the appellee (defendant).

DICKENSON, J. This is an appeal from a judgment of the Court of Common Pleas dismissing an appeal from a ruling of the liquor control commission denying the plaintiff a package store permit. The trial court heard no additional testimony, deciding the case upon the evidence before the commission. There was, therefore, no occasion for the court to make a finding of facts and we do not consider the one which it made or the plaintiff's assignment of error in the denial of a correction of it. *Sorensen* v. *Cox,* 132 Conn. 583, 587, 46 A.2d 125; *Dion* v. *Dion,* 128 Conn. 416, 417, 23 A.2d 314.

The plaintiff's claims are that General Statutes, Sup. 1945, § 634h (3), upon which the denial of a permit was based, is unconstitutional as an unwarranted delegation of legislative authority to the commission; that, if the subsection is constitutional, the facts do not warrant the action of the commission; and that the term "a suitable place," as used in § 640h, refers to a plot, building or structure alone, and not, as the trial court held, to a "community."

Section 634h is as follows: "The commission may, except as to a store engaged chiefly in the sale of groceries, refuse to grant permits for the sale of alcoholic liquor if it has reasonable cause to believe: (1) That the proximity of the permit premises will have a detrimental effect upon any church, public or parochial school, convent, charitable institution, whether supported by private or public funds, hos-

pital or veterans' home or any camp, barracks or flying field of the armed forces; (2) that such location is in such proximity to a no-permit town that it is apparent that the applicant is seeking to obtain the patronage of such town; (3) that the number of permit premises in the locality is such that the granting of a permit is detrimental to public interest, and, in reaching a conclusion in this respect, the commission may consider the character of, the population of, the number of like permits and number of all permits existent in, the particular town and the immediate neighborhood concerned, the effect which a new permit may have on such town or neighborhood or on like permits existent in such town or neighborhood; (4) that the place has been conducted as a lewd or disorderly establishment, or (5) that there is any other reason as provided by state or federal law or regulation which warrants such refusal."

The plaintiff apparently does not contend that the legislature has no power to delegate any discretionary authority. His claim, as indicated by the authorities he relies upon, is that subsection (3) contains no primary standards sufficient to guide the commission in its enforcement. Specifically, he questions whether, in granting the commission power to determine whether a permit would be detrimental to public interest because of the number of permits in the locality and in the immediate neighborhood involved, the legislature furnished a sufficient standard, or left too much to the discretion of the commission.

In *Connecticut Baptist Convention* v. *McCarthy,* 128 Conn. 701, 25 A.2d 656, where the mayor of a city of more than ten thousand population was given legislative authority to issue certificates of approval

of location for gasoline stations, we held that there were no standards set up for the determination of suitable locations and that the act was unconstitutional as an unauthorized delegation of authority to the mayor. In *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 540, 45 A.2d 828, we said that "To attempt to give to any small group of individuals such as a zoning commission or appeal board the power to determine in the exercise of its unrestricted discretion what uses might be made of the properties in a community would not only be contrary to sound social policy but clearly unconstitutional." And see *State* v. *Van Keegan,* 132 Conn. 33, 36, 42 A.2d 352. In *State* v. *Stoddard,* 126 Conn. 623, 13 A.2d 586, where extensive powers were given to a milk administrator by the legislature, we held (p. 628) that, while the legislature in creating a law complete in itself and designed to accomplish a particular purpose, may expressly authorize an administrative agency to fill up the details by prescribing rules and regulations for its enforcement, in order to make such a delegation of power constitutional the statute must "declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform, with a proper regard for the protection of the public interests and with such degree of certainty as the nature of the case permits, and enjoin a procedure under which, by appeal or otherwise, both public interests and private rights shall have due consideration." And see *H. Duys & Co.* v. *Tone,* 125 Conn. 300, 312, 5 A.2d 23, and cases therein cited.

The general purpose of the act must be considered in construing it; *Leete* v. *New York, N. H. & H. R.*

*Co.,* 87 Conn. 57, 62, 86 A. 760; *State ex rel. McNamara* v. *Civil Service Commission,* 128 Conn. 585, 588, 24 A.2d 846; and it should be considered as a whole. *Kelly* v. *Dewey,* 111 Conn. 281, 286, 149 A. 840; *Lake Garda Co.* v. *LeWitt,* 126 Conn. 588, 592, 13 A.2d 510. In subsection (1) of § 634h, while the legislature specifically refers to the granting of permits having a detrimental effect upon churches, schools, charitable institutions, hospitals and military establishments, it leaves it to the commission to determine whether the proximity of the place of permit will be detrimental. Provision (2) leaves it to the commission to determine whether the application for a permit location in one town is apparently sought to obtain patronage from an adjoining no-permit town. The act as a whole contains the suggestion that harm from the sale of liquor, as it relates to place or person, is a matter of special knowledge acquired, or to be acquired, by the liquor control commission appointed for that purpose. The legislature recognizes, and we may take judicial notice of the fact, that different towns and different neighborhoods in those towns may present different situations as to the sale of intoxicating liquor and that a legislative fiat may not apply to all alike.

"The legislature, in defining the duties of an administrative body, can ordinarily only give it general rules for its guidance, by defining certain ultimate facts which it must find to exist before taking certain prescribed action." *State* v. *Darazzo,* 97 Conn. 728, 734, 118 A. 81. "It is patent that the adaptability of any person to such a business [that of selling intoxicating liquor] depends upon facts and circumstances that may be indicated but cannot be fully defined by law, whose probative force will differ in different

cases, and must in each case depend largely upon the sound judgment of the selecting tribunal." *Smith's Appeal,* 65 Conn. 135, 138, 31 A. 529. In *Newington* v. *Mazzoccoli,* 133 Conn. 146, 155, 48 A.2d 729, we quoted this statement in connection with the question of suitability of place and we said (p. 156) : "An inquiry as to suitability of either person or place presents a question of fact."

The plaintiff contends that no guides are supplied by the act because subsection (3) fails to state what characteristics of population are to be considered, what elements are to be considered in determining the relationship of the number of permits to the population, what facts must exist indicating detriment to public interest not already present because of existing permits, and what facts are to be considered in determining the effect on existing permits. A principle and purpose may be read into the act to prevent the issuance of too many permits in certain localities, depending upon the character and number of the population and upon the number of existing permits in the locality. We hold that these are factual matters properly left to the determination of the commission.

As to the plaintiff's claim that the ruling was not warranted by the facts, it was undisputed that the place for which the permit was sought was in the business district of the town of Stafford, which has a population of about fifty-eight hundred; that there was a tavern fifty feet west of the plaintiff's place, a package beer store ninety-five feet west of it, a drug store one hundred and sixty-five feet west of it, a restaurant with a liquor permit one hundred and eighty-five feet west of it, a package store two hundred and seventy-five feet west of it, a package store

seventy-five feet east of it, a restaurant with a liquor permit one hundred and sixty feet east of it, a package beer store three hundred and twenty-five feet east of it, a package beer store three hundred and ninety feet east of it, a drug store four hundred and twenty feet east of it, all of these on the same street, and on neighboring streets a package liquor store eight hundred and fifteen feet from it, a beer package store eight hundred and fifteen feet from it and a package liquor store one thousand feet from it.

The apparent contention of the plaintiff is that no legal inference can be drawn from these facts that an additional permit would be detrimental to public interest, and that direct evidence that the allowance of one would be detrimental was required before the commission or the trial court could so rule. We have already pointed out a principle in the act to restrict the number of permits in certain localities and a purpose to leave the determination of when this should be done to the commission, guided by the size of the population and its characteristics and the number of existing permits. We cannot say that the commission might not reasonably have inferred from the large number of the permits existing that any additional permits would be detrimental to public interest in the locality. It was contemplated by the legislature that the commission might draw the line somewhere, and we see nothing arbitrary or illegal in the ruling of the commission, supported as it is by the judgment of the trial court, that this was a point at which it might be drawn.

The final claim of the plaintiff is that the trial court erroneously concluded that the unsuitability of place was not restricted to a plot, building, or structure but had reference also to the unsuitability of

the community for another liquor permit. The trial court's conclusion was that unsuitability of place had reference to the unsuitability of the business in a particular community. This was correct in its application to the facts of this case. Subsection (3) relates to the "number of permit premises in the locality." It is not concerned with the character of the applicant's plot or building, but is concerned with the fact that the saturation point may be reached with regard to the number of permit premises.

The governing clause in § 634h is that the commission may refuse a permit in such cases "if it has reasonable cause to believe" that to grant one would be detrimental to public interest. We cannot say that its conclusion, fortified as it is by that of the trial court, is so unreasonable as to constitute an abuse of discretion.

There is no error.

In this opinion the other judges concurred.