[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION FACTS
On March 30, 1991, Maria Diaz (Appellant) was arrested for operating a motor vehicle under the influence of alcohol and/or drugs pursuant to CGS 14-227a. The police authority alleges that appellant refused a chemical test of her breath following her arrest.
On April 17, 1990, the State of Connecticut, Department of Motor Vehicles, Adjudication Unit, did hold a hearing pursuant to CGS 14-227b as amended by Public Act 89-314 (14-227b) relevant to appellant's alleged refusal to submit to a chemical test of her breath following arrest. The appellant was represented by counsel a said hearing. The Adjudication Unit did render a decision against appellant and ordered that her motor vehicle operator's license be suspended for a period of six months.
The appellant claims in her appeal that the statutory mandates of CGA 14-227b(c) were not complied with in that the report admitted into evidence at the hearing was 1) not "sworn to under penalty of false statement"; 2) did not bear a notarial seal or seal of the state police; and 3) there was no indication in the report as to whether the oath administrator was commissioned and, if so commissioned, the temporal duration of that commission. The appellant claims that this statutory non-compliance should CT Page 5825 have rendered the report inadmissible and the evidence therefore would have been insufficient for the hearing officer to make a finding of probable cause.
The appellant further claims that she was not informed (pursuant) to 14-227b(b)) of the consequences of her refusal to take a chemical test[1] that her refusal was not an intelligent one and, therefore, the hearing officer was erroneous in finding a refusal.
A review of the record before the hearing officer on April 17, 1990, reveals and the court finds that: A form entitled "Officer's DWI Arrest and Alcohol Test Refusal or Failure Report" (report) was admitted into evidence as State's Exhibit A over the objection of appellant; the report contained the signature of the arresting officer before whom such refusal was made along with the language "subscribed and sworn to before me (signature) Sergt Dennis Smith #200"; the report was endorsed by a third person who witnessed such refusal; the report bears no seal or indication of the commission or the temporal duration of the commission of the oath administrator; the transcript of the hearing clearly indicates the appellant's refusal to take the test and appellant's claim that the arresting officer failed to advise her of the consequences of said refusal; a copy of the Implied Consent form which indicates that the appellant signed said form.
The appellant claims that the improper admission of the report and/or the failure of the arresting officer to advise her of the consequences of her failure to take the chemical test resulted in a decision that was arbitrary, based on incompetent evidence, illegal and an abuse of discretion.
ISSUES
1. Was the admission into evidence of the report by the hearing officer an abuse of discretion and illegal?
2. Was the finding by the hearing officer of appellant's refusal to take the chemical test an abuse of discretion and illegal?
DISCUSSION
A person must aggrieved by the final decision in a contested case in order to appeal. See City of New Haven v. New Haven Police Union, 210 Conn. 597, 606 (1989). First, the party claiming aggrievement must successfully demonstrate a specific, personal, and legal interest in the subject matter of the decision, as distinguished from a general interest, such as CT Page 5826 is the concern of all members of the community as a whole. Bakelaar v. City of West Haven, 193 Conn. 59, 65 (1984). Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. Bakelaar, supra, 65.
The appellant herein has been ordered by the Department of Motor Vehicles to surrender her operator's license. The court finds that the appellant is aggrieved.
In administrative appeals, the court cannot substitute its judgment for that legally vested in the agency. See Cos Cob Volunteer Fire Co. No. 1, Inc. v. FOIC, 212 Conn. 100, 105
(1989); Buckley v. Muzio, 200 Conn. 1, 3 (1986).
The court must determine on the record whether there is a logical and rational basis for the decision or whether, in the light of the evidence, the agency has acted illegally or in abuse of its discretion. The burden of proving that the agency acted illegally and in excess of its authority is on the one asserting it. Woodbury Water Co. v. Public Utilities Commission, 174 Conn. 258, 260 (1978).
The court on judicial review "shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." C.G.S. 4-183(j)(5); see Lawrence v. Kozlowski, 171 Conn. 705, 713 (1976), cert. denied, 431 U.S. 969 (1977). An administrative finding is supported by the evidence if the record contains a substantial factual basis from which the fact in issue can be reasonably inferred. Briggs v. State Employees Retirement Commission,210 Conn. 214, 217 (1989). "Under this test, the mere erroneous admission . . . of evidence will not invalidate an order of the commission. Substantial prejudice must be affirmatively shown." Lawrence v. Kozlowski, supra, 714.
The function of the court in reviewing an agency's action is not to reach its own conclusions upon the subordinate facts, but only to determine whether the conclusion of the agency on such facts is unreasonable or illogical. Campisi v. Liquor Control Commission, 175 Conn. 295, 296 (1978). Review of an appeal taken from the order of an administrative agency, therefore, is limited to determining whether the agency's findings are supported by substantial and competent evidence and whether the agency's action exceeds its statutory authority or constitutes an abuse of discretion. State v. Commission on CT Page 5827 Human Rights Opportunities, 211 Conn. 464, 477 (1989).
Conclusions reached by an administrative body must be upheld by the court if they are supported by the evidence that was before the agency. The question is not whether the trial court would have reached the same conclusions, but whether the record before the administrative agency supports the action taken. Harrison v. Commissioner, 204 Conn. 672, 680 (1987).
Our inquiry of appellant's claim commences with a review of the statute that appellant asserts was not complied with by the police authorities. The relevant portion of 14-227b(c) provides:
 The report shall be made on a form approved by the commissioner of motor vehicles and shall be sworn to under penalty of false statement as provided in section 53a-157 by the police officer before whom such refusal was made or who administered or caused to be administered such test or analysis. If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal.
Although the specific language of the statute "sworn to under penalty of false statement" does not appear on the face of the report, the court finds that the language that is contained in the report is sufficient for the court to find that an oath was administered and that the authority who did undertake the oath (the arresting officer) was a duly sworn police officer and is held to have knowledge that a violation of the oath carries a penalty.
It is noteworthy that the form utilized as the report is one which is approved by the Commissioner of Motor Vehicles as required by the statute.
The appellant next claims that the report did not bear a notarial seal or seal of the state police.
A review of the relevant portion of CGS 1-24 indicates that:
 The following officers may administer oaths: (13) . . . the chief, acting chief, superintendent of police, major, captain, lieutenant, sergeant, and corporal of any local police department . . . in all . . . reports made to or by any member of any local police department . . . . CT Page 5828
A review of the report reveals that a sergeant of the Glastonbury Police Department did administer the oath to the arresting officer. It is noteworthy that CGS 1-24 (13) does not require that a notary or state police seal be affixed to any document demonstrating the administration of the oath. Nor does CGS 1-24 (13) require that any term of an oath administrator's "Commission" be recorded on the subject document.
Appellant cites in her brief that portion of 3-91 that she claims is relevant: ". . . police officers may exercise their authority as notaries public only in the administration of oaths . . . and in such case, the seal of the state police shall be the notarial seal." Appellant claims the statute is clear in that it mandates police officers to affix a state police seal
A careful review of 3-91 reveals that the subject of the relevant portion of the statute refers to state police officers not local police officers:
 The fee of forty dollars shall be waived for all state police majors, captains, lieutenants, and sergeants making application for appointment as notary public, except that such police officers may exercise their authority as notaries public only in the administration of oaths . . ., and in such case, the seal of the state police shall be the notarial seal. CGS 3-91.
It is clear that the phrase in the statute "such police" refers to state police. The police authorities in the case at bar are members of a municipal police department.
The court's interpretation of 3-91 is not only a result of the clear language of the statute but is consistent with the requirement that a state police seal be utilized.
The requirements of a notarial seal for local police is not found in 3-91, and is not found in the successor statute of3-94e, nor is it found in 1-24 (supra).
The court likewise finds no authority for appellant's claim that the police officer's oath administrator must record his commission and its duration.
The requirement that the arresting officer who completes the report must be put under oath is to provide sufficient indicia of reliability so that the report can be introduced in evidence as an exception to the hearsay rule, especially in license suspension proceedings, without the necessity of CT Page 5829 producing the arresting officer. Volck v. Muzio, 204 Conn. 507,518.
Administrative tribunals are not strictly bound by the rules of evidence and they may consider evidence which would normally be incompetent in a judicial proceeding, as long as the evidence is reliable and probative. Griffin v. Muzio, 10 Conn. App. 90,93 (1987). "There is moreover no specific prohibition against hearsay evidence in the Uniform Administrative Procedure Act, which provides that `(a)ny oral or documentary evidence may be received, but (that) the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence.' General Statutes 4-178(1)." Tomlin v. Personnel Appeal Board, 177 Conn. 344, 348 (1979).
In the event that the report has sufficient indicia of reliability it is admissible. The report herein is tendered under oath and complies with the other statutory requirements of14-227b(c). The report meets the requisite standard of trustworthiness and its admissibility was not an abuse of the hearing officer's discretion.
Though the strict adherence to the rules of evidence is not mandated in an administrative hearing, the court finds that the rules of evidence were followed in the case at bar.
The appellant next claims that she was not informed (pursuant to CGS 14-227b(b)) of the consequences of her refusal to take a chemical test.
This issue was decided in Volck v. Muzio, 204 Conn. 507, wherein our supreme court stated the following:
 It is only by strictly following the statutory requirements that an operator's refusal of chemical testing can be used in a criminal prosecution against (her) for operating under the influence or with impaired ability. On the other hand, the restriction of a license suspension hearing to the four issues specified in subsection (d) of 14-227b (probable cause, arrest, refusal of testing and operation of a motor vehicle) is indicative of the legislative view that the failure to comply precisely with the requirements of subsection (b) should not prevent suspension of the license of a person, arrested with probable cause for believing he was operating under the influence or with impaired ability as a result of intoxicating liquor, who has refused to the prescribed tests.
CT Page 5830
 The legislative genealogy of our implied consent statute supports our interpretation of 14-227b(d) not to permit a failure of the police to comply with all the requirements of subsection (b) of that statute to vitiate the license suspension of an operator who has refused chemical testing. Id, 514.
It is clear that with respect to a license suspension hearing whether an operator was warned of the consequences of refusing to submit to chemical tests is not made one of the issues to be adjudicated pursuant to subsection (d). Although one of the four issues to be determined is whether a driver has refused to submit to chemical testing, (her) knowledge of the consequences is not an essential factor in deciding whether such a refusal occurred. Id, 520.
The 1967 amendments to 14-227b required, for a license suspension because of a driver's refusal of testing, a finding that "the refusal to submit to the test was made knowingly and wilfully." Subsequent acts of the legislature deleted the words "knowingly" and "wilfully," leaving only the present requirement of a finding that a driver "(d)id . . . refuse to submit to such test or analysis."
There is substantial evidence for the fact finder to conclude that the appellant refused the chemical test.
It is noteworthy that the weight of the evidence, as well as matters of credibility, are within the province of the agency. Leib v. Board of Examiners for Nursing, 177 Conn. 78,86 (1979).
The court finds that there is a logical and rational basis for the decisions of the agency and the court finds that the Adjudications Unit of the Department of Motor Vehicles has not acted illegally or in abuse of its discretion in the matter herein.
The appeal is dismissed.
MIANO, J.