ANGEL RIVERA *v.* LIQUOR CONTROL
COMMISSION ET AL.
(AC 17946)

Landau, Schaller and Dupont, Js.

Argued January 28—officially released May 4, 1999

*Alexander Aponte,* for the appellant (plaintiff).

*Robert F. Vacchelli,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

*Opinion*

LANDAU, J. The plaintiff, Angel Rivera, appeals from the judgment of the Superior Court dismissing his administrative appeal. The named defendant, the state liquor control commission (commission),[1] pursuant to General Statutes § 30-46 (a) (1) and (3),[2] denied the plaintiff's application for a cafe liquor permit.[3] On appeal to this court, the plaintiff claims that the Superior Court improperly (1) concluded that there were sufficient facts in the record to deny the application and (2) found that notice of the hearing was adequate. We affirm the judgment of the Superior Court.

[1] "In 1994, the liquor control commission was a legislatively created agency that directed the department of liquor control in its enforcement of the [L]iquor [C]ontrol [A]ct [General Statutes § 30-1 et seq.]. Subsequently, in 1995, the responsibilities of the department of liquor control were transferred to the department of consumer protection. See Public Acts 1995, No. 95-195, §§ 13 and 83. The liquor control commission, however, continues to direct enforcement of the [L]iquor [C]ontrol [A]ct." *Loulis* v. *Parrott,* 241 Conn. 180, 183 n.4, 695 A.2d 1040 (1997).

[2] General Statutes § 30-46 (a) provides in relevant part: "The Department of Consumer Protection may . . . refuse to grant or renew a permit for the sale of alcoholic liquor if it has reasonable cause to believe: (1) That the proximity of the permit premises will have a detrimental effect upon any church, public or parochial school, convent, charitable institution, whether supported by private or public funds, hospital or veterans' home or any camp, barracks or flying field of the armed forces . . . (3) that the number of permit premises in the locality is such that the granting of a permit is detrimental to the public interest, and, in reaching a conclusion in this respect, the department may consider the character of, the population of, the number of like permits and number of all permits existent in, the particular town and the immediate neighborhood concerned, the effect which a new permit may have on such town or neighborhood or on like permits existent in such town or neighborhood . . . ."

[3] The other defendants named in the underlying action are the remonstrants who testified before the commission. The commission, however, prosecutes the appeal to this court alone.

The following facts are not in dispute. The plaintiff applied for a cafe liquor permit in August, 1995, for premises located at 58 Rockwell Avenue, New Britain, formerly the site of a cafe owned and occupied by another individual not involved in this action whose permit had been revoked by the commission. Residents of the neighborhood filed a remonstrance, pursuant to General Statutes § 30-39 (c), and eighteen letters of protest objecting to the proposed location of the establishment. The commission issued a notice of hearing, advising the plaintiff that he would be required to present facts and evidence in support of his application for the liquor permit.[4]

In its written decision, the commission made the following findings of fact with respect to the character of the neighborhood: "[T]he proposed premises [are] in the heart of a residential neighborhood that is struggling to revitalize and improve its quality of life; there are several churches and two parochial schools, including St. Matthew's, First Lutheran, St. Peter's, St. John's Lutheran, and Arco de Regio Pentecostal; there [are] a methadone clinic, Salvation Army, and senior citizen housing, as well as child day care centers; and both the hearing and the permit records of the commission, of which the commission takes notice, reveal there are liquor outlets within close proximity to the proposed establishment." The commission found the proposed premises unsuitable and denied the application. Specifically, the commission concluded that "based upon the facts of this case, it is the considered judgment of the

[4] Specifically, the notice stated in relevant part: "You will be required to furnish facts and evidence in support of the application relative to suitability of person and place as provided by Chapter 545 of the Connecticut General Statutes and the Regulations of the Connecticut State Agencies.

"IN ADDITION TO THE ABOVE THIS HEARING IS BEING HELD ON A QUESTION OF: ISSUE #1: REMONSTRANCE; ISSUE #2: SUITABILITY OF PREMISES; ISSUE #3: SUITABILITY OF PERSON; ISSUE #4: ZONING; ISSUE #5: APPLICATIONS/ZONING."

commission that the addition of one more full-service cafe, in light of the character of this neighborhood, is not in the public interest and would have a detrimental effect. . . . We believe that the saturation point has already been reached with the existing establishments."

Thereafter, the plaintiff appealed to the Superior Court, pursuant to General Statutes § 4-183. See Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.[5] The Superior Court dismissed the plaintiff's appeal. It concluded that "the decision of the commission is amply supported by the evidence in the record." Moreover, the Superior Court concluded that the plaintiff "received sufficient notice as to the issues of suitability of the premises with respect to its location." From that judgment, the present appeal ensued.

"The function of the court in reviewing the commission's denial of a permit for the premises is not to reach its own conclusions upon the subordinate facts but only to determine whether the conclusion of the commission on such facts is unreasonable or illogical"; *Campisi* v. *Liquor Control Commission*, 175 Conn. 295, 296, 397 A.2d 1365 (1978); or in abuse of its discretion. *Dolgner* v. *Alander*, 237 Conn. 272, 280, 676 A.2d 865 (1996). It is not the function of the Superior Court to retry the case. *Williams* v. *Liquor Control Commission*, 175 Conn. 409, 414, 399 A.2d 834 (1978). "Courts are bound by the findings of subordinate facts and reasonable conclusions of fact made by an administrative tribunal. The General Assembly, in defining an administrative body's duties, can ordinarily state only general rules for its guidance by defining certain ultimate facts which it must find to exist before taking the prescribed

---

[5] The commission is an agency within the meaning of General Statutes § 4-166 (1) and is subject to the provisions of the UAPA. *All Brand Importers, Inc.* v. *Dept. of Liquor Control*, 213 Conn. 184, 211, 567 A.2d 1156 (1989).

action." *Campisi* v. *Liquor Control Commission*, supra, 296. The question that the Superior Court must answer is whether the record before the commission supports the action taken. *Williams* v. *Liquor Control Commission*, supra, 414.

We review the issues raised by the plaintiff in accordance with the limited scope of judicial review afforded by the UAPA. *Dolgner* v. *Alander*, supra, 237 Conn. 280. Under § 4-183 (j) (5) and (6) of the UAPA, judicial review of administrative fact-finding is governed by the substantial evidence rule. Id., 281. "An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) Id.

I

The plaintiff first argues that the Superior Court improperly concluded that there were sufficient facts in the record to support the commission's denial of his application. We are not persuaded.

Section 30-46 (a) provides: "The Department of Consumer Protection may . . . refuse to grant or renew a permit . . . if it has reasonable cause to believe . . . (3) that the number of permit premises in the locality is such that the granting of a permit is detrimental to the public interest, and, in reaching a conclusion in this respect, the department may consider the character of, the population of, the number of like permits and number of all permits existent in, the particular town and the immediate neighborhood concerned, the effect which a new permit may have on such town or neighborhood or on like permits existent in such town or neighborhood . . . ." "That provision confers broad discretion upon the . . . commission to grant or deny permits. . . . In *Biz* v. *Liquor Control Commission*, 133 Conn. 556, 561, 53 A.2d 655 [1947], [our Supreme

Court] in considering the provisions of § 30-46 (a) (3) noted that '[a] principle and purpose may be read into the act to prevent the issuance of too many permits in certain localities, depending upon the character and number of the population and upon the number of existing permits in the locality. We hold that these are factual matters properly left to the determination of the commission.' The determination of what constitutes too many permits in certain localities or neighborhoods is thus a question of fact, within the discretion of the administrative agency. Moreover, because of the danger to public health and welfare inherent in liquor traffic, the police power to regulate the liquor trade runs broad and deep, more so than comparable regulatory powers over other activities." (Citations omitted.) *Williams* v. *Liquor Control Commission*, supra, 175 Conn. 411–12.

We are cognizant that the legislature, in permitting an administrative agency to take prescribed action, contemplates allowing that agency to draw a line somewhere, and we see nothing arbitrary or illegal in such a ruling as long as it is supported by evidence and the proper application of the statute to the facts. See *Biz* v. *Liquor Control Commission*, supra, 133 Conn. 562. In this case, the commission drew its line within the circle of supporting evidence concerning the number of permits existing in the neighborhood. The record clearly reveals that the commission's conclusion that granting the permit would be detrimental to the public interest was made after receiving considerable evidence. As to the number of permits in the locality, the commission received evidence that there are at least two other bars one block away from the proposed premises. Moreover, a package store is located in close proximity to the proposed establishment. The neighborhood at issue is residential and struggling to revitalize, having been a dangerous area plagued by various forms of

criminal activity[6] during the time that the previous cafe occupied the site. There are several churches, schools and child care centers in the community, along with senior citizen housing and a methadone clinic.

We conclude, therefore, that there was a substantial basis from which the commission reasonably could have inferred that granting the permit would have been detrimental to the public interest under § 30-46 (a) (3). The same findings could also have led the commission reasonably to infer that the proximity of the premises would have a detrimental effect on the organizations located in the neighborhood. See General Statutes § 30-46 (a) (1).[7]

In support of his argument that there were insufficient facts on which the commission could have based its decision, the plaintiff claims that the commission relied on facts that were not supported by evidence. Specifically, the plaintiff claims that there was no evidence presented regarding the types of permits held by the other establishments in the neighborhood or the names or locations of those establishments. In support of that argument, the plaintiff relies on *Crescimanni* v. *Dept. of Liquor Control*, 41 Conn. App. 83, 674 A.2d 851 (1996). That reliance, however, is misplaced. In *Crescimanni*, the commission rejected an applicant but failed to make findings or conclusions as to the number

---

[6] The criminal activity included, among other things, a homicide, drug activity and incidents involving gunfire.

[7] The plaintiff also asserts that § 30-46 (a) (1) and (3) statutorily require that the commission make specific findings that are separate and distinct, which the commission failed to do. The plaintiff's reliance on *Turner* v. *Turner*, 219 Conn. 703, 595 A.2d 297 (1991), in support of his argument, however, is misplaced. *Turner* states that it is presumed that the legislature has a purpose for each phrase in a legislative enactment. Id., 713. There is, however, no language in *Turner* that sets forth a requirement that separate factual findings must be drafted under each subsection of a statute on which one relies. The plaintiff cites no other authority to support his argument and we can find none.

of permits in the vicinity. Here, unlike in *Crescimanni*, the commission took notice of the existence of two other bars in the immediate area, establishments that have similar permits, and liquor outlets that are within close proximity. The commission, therefore, reasonably could have inferred that given the number of similar permits in the area surrounding that particular location and the character of the neighborhood, "the saturation point [had] already been reached with the existing establishments."

In view of the highly deferential standard of review accorded to the actions of an agency, we are persuaded that the record contained substantial evidence to support the commission's denial of the application under either subsection.[8]

## II

The plaintiff finally claims that the Superior Court improperly found that notice of the hearing was adequate. Specifically, the plaintiff asserts that he was not given notice that the commission was evaluating the application under the standards incorporated in § 30-46 (a) (1) and (3) and, thus, the commission violated the fundamental fairness rule. We disagree.

---

[8] Moreover, the plaintiff argues that § 30-46 requires the commission to exclude from its consideration information regarding previous establishments that occupied a proposed premises. The plaintiff, however, cites no authority in support of this contention. We note that the commission, in determining the number of permits in certain localities, could have exercised its broad discretion to consider factors such as the effect of other establishments on an applicant's business. Our Supreme Court has indicated that, after considering other business in the immediate area, the commission could have denied a permit based on the probability that the applicant's business would not be profitable or that the applicant might engage in the illegal sale of liquor. *Aminti* v. *Liquor Control Commission*, 144 Conn. 550, 554, 135 A.2d 595 (1957). Furthermore, we note that § 30-46 (a) (4) allows a commission to deny a permit if there is reasonable cause to believe "that the place has been conducted as a lewd or disorderly establishment . . . ."

"[T]he test of whether one is given adequate notice is whether it apprises [the plaintiff] of the claims to be defended against, and on the basis of the notice given, whether [the] plaintiff could anticipate the possible effects of the proceeding." (Internal quotation marks omitted.) *Fleischman* v. *Board of Examiners in Podiatry*, 22 Conn. App. 181, 191, 576 A.2d 1302 (1990). The plaintiff was notified that he was required to furnish facts and evidence in support of his application "relative to suitability of . . . place as provided by Chapter 545 of the Connecticut General Statutes and the Regulations of the Connecticut State Agencies." Chapter 545 of the General Statutes, the Liquor Control Act, includes the section cited by the agency in its decision, § 30-46 (a) (1) and (3). Furthermore, the plaintiff was also notified that the agency would consider the issues of remonstrance and the suitability of the premises.[9] The remonstrance and letters objecting to the location of the cafe, which were part of the record, include references to the proximity of the location to various organizations in the neighborhood and references to past incidents at the location.

We are persuaded that the plaintiff had advance notice that the commission, in reviewing the appropriateness of his proposed location, would also consider the impact that it would have on the neighborhood. We cannot say, therefore, that the plaintiff was misled as to the nature of the hearing. See, e.g., *Hart Twin Volvo Corp.* v. *Commissioner of Motor Vehicles*, 165 Conn. 42, 44, 327 A.2d 588 (1973). By citing the relevant chapter of the General Statutes and referencing the issues that would be considered, the commission provided the plaintiff with sufficient notice. See General Statutes § 4-177 (b).[10] The plaintiff was accorded his common-law

---

[9] See footnote 4.

[10] General Statutes § 4-177 (b) provides in relevant part: "The notice shall . . . include . . . (3) a reference to the particular sections of the statutes

right to fundamental fairness in administrative hearings. See *Grimes* v. *Conservation Commission*, 243 Conn. 266, 273, 703 A.2d 101 (1997).[11] We cannot say that the commission's decision to deny the application for a liquor permit was unreasonable so as to constitute an abuse of discretion. We conclude, therefore, that the Superior Court properly dismissed the plaintiff's appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

---

and regulations involved; and (4) a short and plain statement of the matters asserted. . . ."

[11] Moreover, it is rather late in the day for the plaintiff to make this argument. If the plaintiff was in doubt as to what constituted the "suitability of premises" issue in the notice, he could have requested a more specific statement. See General Statutes § 4-177 (b) ("[i]f the agency . . . is unable to state the matters in detail . . . the initial notice may be limited to a statement of the issues involved. Thereafter, upon application, a more definite and detailed statement shall be furnished"). That he did not do and cannot now complain.